UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MULTICARE HEALTH SYSTEM, a Washington non-profit,<br><br>　　　　Plaintiff/Counterclaim Defendant,<br><br>　　v.<br><br>CHS WASHINGTON HOLDINGS, LLC, a Delaware limited liability company, and CHS/COMMUNITY HEALTH SYSTEMS, INC., a Delaware corporation,<br><br>　　　　Defendants/Counterclaim Plaintiffs. | No. 2:22-CV-0007-TOR<br><br>ORDER ON AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

ORDER ON AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – 1
{04618452.DOCX;1 }

A.  **General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

3. Nothing in this Order shall preclude the producing party from collecting or producing additional materials beyond those identified pursuant to the procedure described herein.

4. The parties agree that the producing party is under no obligation to identify the request for production to which a particular document is responsive, nor is the producing party obligated to identify (by Bates Number or otherwise) which documents are being produced in response to a particular request for production. But to the extent either party produces handwritten documents (e.g., notes, journals, notepads), the producing party shall identify those documents by Bates number and author.

**B.     ESI Disclosures**

Within thirty (30) days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.     <u>Custodians.</u> The ten (10) custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. A party may identify fewer than ten custodians if the party determines in good faith and in compliance with Federal Rule of Civil Procedure 26 that fewer custodians possess discoverable ESI.

2.     <u>Non-Custodial Data Sources.</u> A list of non-custodial data sources (e.g., shared drives, servers), if any, most likely to contain discoverable ESI.

3.     <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.     <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system, or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B).

C.  **ESI Discovery Procedures**

1. <u>On-Site Inspection of Electronic Media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search Methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

   a. Prior to running searches:

      i. Within twenty-one (21) days of submitting responses and objections to any request for production, the producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information (the producing party's "Initial Search Terms or Queries"). The producing party shall provide unique hit counts for each search query. The producing party shall make a good-faith effort to propose Initial Search Terms or Queries and data sources proportional to each of the requesting party's requests for production.

     ii. The requesting party is entitled to, within fourteen (14) days of the producing party's disclosure, add (a) no more than twenty (20) search terms or queries to the Initial Search Terms or Queries disclosed by the producing party and (b) no more than five (5) total additional Custodians or non-custodial data sources, provided that the addition of terms, Custodians, or sources is not overly burdensome.

     iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results and provide a counter proposal correcting the overbroad search or query.

    b. After production: At the time the producing party has substantially completed the production of documents responsive to a request, it shall notify the receiving party of such; the responding party may thereafter request no more than twenty (20) additional search terms or queries (the requesting party's

ORDER ON AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – 5
{04618452.DOCX;1 }

"Additional Search Terms or Queries"), subject to the same search methodologies set forth in the preceding paragraphs, provided that the addition of terms or queries is not overly burdensome, and either the parties agree to the addition of terms/queries or the requesting party has shown good cause for doing so. The producing party shall provide a unique hit count (i.e., documents that do not hit on other search terms or queries, that have not been produced previously, and that have been de-duped within the set) for each Additional Search Term or Query, and the parties will reach agreement on the Additional Search Terms or Queries to be used before the producing party produces documents hitting on these Additional Search Terms or Queries. In assessing the burden associated with adding search terms or queries, the producing party may consider the unique hit count.

3. <u>Predictive Coding, Technology Assisted Review, and Advanced Analytics.</u> The parties may use reasonable techniques to further identify relevant or irrelevant documents, including, but not limited to, predictive coding, other technology-assisted review, and/or any form of advanced analytics.

4. <u>Timing.</u> The parties will make good faith efforts to substantially complete production related to then-outstanding discovery requests thirty (30) days before initial expert reports become due to allow the parties to evaluate document productions and serve any follow-up discovery requests or necessary discovery motions within the time allowed for discovery by the Court's scheduling order.

5.   Format.

The parties agree to format their productions as follows:

   a.   TIFFS. Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single page TIFF images should be named according to the unique Bates Number, followed by the extension ".TIFF". Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

   b.   Text Files. For each document originating in electronic format, a text file containing the full text of each document should be provided along with the image files and metadata. Text of native files should be extracted directly from the native file. The text file should be named according to the unique Bates Number, followed by the extension ".TXT." The parties agree that the full text and/or OCR of any document will not be contained within a database load file, but rather as a standalone file with each text file containing an entire document as they are defined.

   c.   Database Load Files. An ASCII delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Concordance) shall be provided for all produced documents. The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the database load file must contain the same number of fields as defined in the header row.

ORDER ON AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – 7
{04618452.DOCX;1 }

   d. <u>Cross-Reference Image File Registration.</u> An image load file that can be loaded into commercially acceptable production software (e.g., Opticon, iPro) shall be provided for all produced documents. Each TIFF in a production must be referenced in the corresponding image load file. An exemplar load file format is below.

   ABC0000001,PROD001,\\IMAGES\001\ABC0000001.tif,Y,,,2

   ABC0000002,PROD001,\\IMAGES\001\ABC0000002.tif,,,,

   ABC0000003,PROD001,\\IMAGES\001\ABC0000003.tif,Y,,,1

   e. <u>Native Productions.</u> Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheets, databases, and drawing files, shall be produced in native format with a corresponding Bates-Numbered cover page. Upon reasonable request, a party shall produce a file in native format that was previously produced as a TIFF file.

   f. When a text-searchable image file is produced, the producing party must take reasonable steps to preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. Nothing in this provision excuses a party from providing a document's filename as part of the below specified metadata disclosures.

   g. If any document contains comments or tracked changes, the document shall be produced in such native format that the comments and tracked

ORDER ON AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – 8
{04618452.DOCX;1 }

changes are readily visible (e.g., Word documents) or the TIFF images shall be generated to include the comments or track changes contained in the file.

   h. Attachment(s) to emails shall be processed as separate documents, with the attachment(s) composing the same family as the parent email, and the text database load file shall include a field in which the producing party shall identify the production range of all attachments of each email.

   i. Embedded files shall be treated as separate files. The load file shall include a field in which the producing party shall identify, for each document containing an embedded file, the production range of any such embedded file. This production range may be identified in the same field as the production range of an email attachment.

   j. The parties shall process presentations (e.g., MS PowerPoint, Google Presently) to include hidden slides and speaker's notes by imaging in a way that both the slide and the speaker's notes display on the TIFF image.

   k. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

   l. Except as otherwise specifically provided herein or agreed to by the parties, documents originally in color need not be produced in color unless the production in black and white alters or obscures the substance of the document.

ORDER ON AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – 9
{04618452.DOCX;1 }

Documents produced in color must be produced with agreed compression. A party may request that a reasonable number of documents be produced in a color format upon review of the other party's production.

    m.    Each document image file shall be named with a unique number (Bates Number).

    n.    Notwithstanding the parties' stipulations herein, upon reasonable request made by the requesting party, the parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this Order.

    6.    <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process must be tracked in a duplicate/other custodian field in the database load file. The parties shall disclose the methodology used for de-duplication upon reasonable request.

    7.    <u>Parent-Child Relationships.</u> Parent-child relationships (the association between an attachment and its parent document) must be preserved so a document and any attachments to that document are produced in the same production set and such relationships are identifiable.

8. <u>Metadata Fields.</u> The parties agree to produce the following metadata as part of document load files: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value. Additionally, two time-related metadata fields should be produced: (1) Time Zone (a description of the time zone in which the document was processed such as "Pacific Standard Time (PST)"); and (2) UTC_Offset (difference in hours and minutes from Coordinated Universal Time for a particular place and date). The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

9. <u>Processing Specifications.</u> When processing ESI for production as an electronic image, the producing party shall set imaging settings to force off "Auto Date" and force on: hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments.

10. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks, attachments, and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using OCR technology and searchable ASCII

text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI).

**D.   Preservation of ESI**

The parties acknowledge that they have a common-law obligation, as expressed in Federal Rule of Civil Procedure 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Federal Rule of Civil Procedure 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (*see also* Section (E)(5)).

    e. Back-up data that are duplicative of data that are more accessible elsewhere.

    f. Server, system or network logs.

    g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    h. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time and accessible elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.    Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than thirty (30) days after delivering a substantially complete production unless an earlier deadline is agreed to by the parties. If the requesting party, in good faith, has reason to believe a particular entry does not reflect privileged discoverable information, the requesting party may request, and the producing party will not unreasonably refuse to create, a supplemental privilege log entry in compliance with Federal Rule of Civil Procedure 26(b)(5). The parties will discuss and consider all reasonable extension requests in good faith.

2. Redactions need not be logged (1) so long as the basis for the redaction is clear on the redacted document and (2) the date and

author(s)/attendee(s)/participant(s) of the redacted material are visible. A party may not redact information on the basis it believes it to be irrelevant or confidential. Unless otherwise agreed to by the parties, redactions should only be made for legal privilege or legally protected private information, such as Social Security Numbers, information protected from disclosure under HIPAA, and other information prohibited from disclosure by law.

      3.     A party that withholds any document entirely on the basis of privilege shall produce a Bates-Numbered placeholder page/slip sheet that contains the following language: "Document Withheld on the Basis of Privilege." A party may withhold wholly privileged members of a family group so long as the party inserts a slip sheet in place of the withheld document indicating that it has been "Withheld for Privilege" and logs such attachments in a privilege log in accordance with the requirements of this Order. Slip sheets need not be produced for wholly privileged document families withheld in their entirety.

      4.     With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

      5.     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Federal Rules of Civil Procedure 26(b)(3)(A) and (B).

6. Pursuant to Federal Rule of Evidence 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

DATED this 30th day of August, 2022.

| CAIRNCROSS & HEMPELMANN, P.S. | PERKINS COIE LLP |
|---|---|
| s/ Patricia A. Laughman [via email]<br>Ana-Maria Popp, WSBA No. 39614<br>E-mail: apopp@cairncross.com<br>Jennifer K. Faubion, WSBA No. 39880<br>E-mail: jfaubion@cairncross.com<br>Patricia A. Laughman, WSBA No. 46716<br>E-mail: plaughman@cairncross.com<br><br>524 Second Avenue, Suite 500<br>Seattle, WA 98104-2323<br>Telephone: (206) 587-0700<br>Facsimile: (206) 587-2308<br><br>Attorneys for Defendants/Counterclaim Plaintiffs | s/ Michelle L. Maley<br>David B. Robbins, Bar No. 13628<br>Email: DRobbins@perkinscoie.com<br>Michelle L. Maley, Bar No. 51318<br>Email: MMaley@perkinscoie.com<br><br>1201 Third Avenue, Suite 4900<br>Seattle, Washington 98101-3099<br>Telephone: (206) 359-8000<br>Facsimile: (206) 359-9000<br><br><br><br>Attorneys for Plaintiff/Counterclaim Defendant |

ORDER ON AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – 16

{04618452.DOCX;1 }

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: September 7, 2022.

*Thomas O. Rice*
Thomas O. Rice
UNITED STATES DISTRICT JUDGE